## IN THE UNITED STATES DISTRICT COURT
## FOR THE EASTERN DISTRICT OF TEXAS
## MARSHALL DIVISION

| | | |
|---|---|---|
| DOOSAN BOBCAT NORTH AMERICA, INC., | § § § | |
| Plaintiff, | § § § | **Civil Action No.:** |
| v. | § § | **JURY TRIAL DEMANDED** |
| CATERPILLAR, INC. and HOLT TEXAS, LTD. d/b/a HOLT GROUP, | § § § | |
| Defendants. | § | |

## COMPLAINT FOR PATENT INFRINGEMENT

Plaintiff Doosan Bobcat North America, Inc. ("Bobcat" or "Plaintiff"), by and through its undersigned counsel, complains and alleges against Caterpillar, Inc. ("CAT" or "Caterpillar") and Holt Texas, Ltd. ("HOLT") (collectively, "Defendants") as follows:

## NATURE OF THE ACTION

1.     This is a civil action for infringement of U.S. Patent No. 10,464,619 ("the '619 Patent"), U.S. Patent No. 10,494,788 ("the '788 Patent"), U.S. Patent No. 9,382,925 ("the '925 Patent"), U.S. Patent No. 10,934,687 ("the '687 Patent"), and U.S. Patent No. 10,302,027 ("the '027 Patent") (collectively, "the Asserted Patents") arising under the patent laws of the United States, 35 U.S.C. §§ 1 *et seq.*

## THE PARTIES

2.     Bobcat is a Delaware corporation with headquarters located at 250 East Beaton Drive, West Fargo, North Dakota, 58078.

3.     Bobcat is an American company with a history of innovation dating back to 1947, when it was founded as Melroe Manufacturing Company by Edward Gideon "E.G." Melroe and his four sons.  Melroe Manufacturing Company ("Melroe") began in Gwinner, North Dakota, as a small farm equipment repair and manufacturing business focused on producing attachments and

implements for agricultural machinery, such as snow blowers and crop sprayers. The company grew steadily in the post-World War II era, capitalizing on the demand for innovative farming tools in the American Midwest. By the late 1950s, Melroe had established itself as a leading innovator in the agricultural sector, attending events like state fairs to showcase and promote its products. Melroe emphasized practical solutions for farmers, which aligned closely with the needs that would later drive its partnership with Cyril and Louis Keller, the inventors of the original compact loader.

4.      In 1957, Cyril and Louis Keller invented the original compact loader, which later resulted in U.S. Patent No. 3,151,503 and, in 2023, led to their induction into the National Inventors' Hall of Fame. The first compact loader was a small, lightweight, maneuverable three-wheeled machine. The machine's unique design, with independent wheel control, allowed it to turn within its own length, a revolutionary concept for the time.

5.      In 1958, Melroe acquired the exclusive manufacturing rights to the machine and hired the Keller brothers to further develop and refine the design. Melroe recognized the loader's potential and began producing it at their plant in Gwinner, North Dakota. The Kellers continued developing the design as Melroe invested in improvements and mass production.

6.      Together with Melroe's team, the Kellers helped evolve the original three-wheeled compact loader into a more stable four-wheeled model, which became the first skid-steer loader with balanced weight distribution essential for easy turning. This was the M400, introduced in 1960. The "Bobcat" name, reflecting the machine's toughness and agility, was introduced in 1962. Cyril Keller was directly involved in sales and training dealers, while Louis Keller worked on design improvements and attachments. The Bobcat loader became a highly celebrated product, producing more than one million units globally.

7.      The Kellers' inventive design, coupled with Melroe's manufacturing capabilities, established an entirely new industry category—compact equipment—pairing toughness with agility

and maneuverability for the first time.  Bobcat created and defined this industry and today continues to drive the industry forward with its cutting-edge innovation and dedication to serving its customers.

8.      The Kellers' story, however, began even earlier in the 1950s.  Following his service in World War I, Louis Keller returned home to Rothsay, Minnesota and worked as a welder and farm equipment repairman; his brother, Cyril, joined the business a few years later.  *See* Prairie Public, *The History of the Bobcat* (2003), https://tinyurl.com/ye28uhjr (last accessed December 1, 2025).  Having grown up on a farm and educated in a one-room schoolhouse, Louis and Cyril Keller had spent their lives working with, repairing, and modifying farm equipment.  *Id*.  The Kellers founded the Keller Brothers Machine Company in Rothsay, Minnesota in 1953.  The brothers advertised their shop with a sign out front that read, "We can repair anything, weld anything, and fix anything but a broken heart."  *Id*.

9.      Beginning as a modest welding and machine company, the Keller Brothers Machine Company developed tractor- and truck-mounted plows, snowblowers, and other farm equipment. In 1953, the Kellers were approached by a local farmer seeking a solution to a longstanding problem on his farm: at the time, there was no machinery small and agile enough to fit inside the multi-story pole-style barns used for turkey farming, containing tights turns and small spaces, which traditional farming equipment could not access. *Id*; *see also* National Inventors Hall of Fame, *2023 Inductee Louis Keller: A Persistent Problem Solver*, June 23, 2023, https://www.invent.org/blog/inventors/louis-keller (last accessed December 1, 2025).

10.     The Kellers got to work developing a machine that could maneuver into tight spaces, make tight turns, but still be powerful enough to move significant loads of material.  The initial design was the world's first small, lightweight, three-wheel front-end loader.  *Id*.  The "Keller Self-Propelled Loader" was designed using "mechanical parts from local junkyards and bars from the

old Rothsay jail for the manure fork teeth." *Id*. To be able to maneuver in the tight confines of a turkey barn, the original machine was "operated using hydraulic foot pedals, a motor in the back, two front tires, and a rear pivoting caster wheel that enabled sharp turns." *Id*. The Kellers patented a clutch system for the operation of the machine, which worked by "using two hand levers [that] made it possible to put one side of the loader into forward and the other side into reverse, without the use of a transmission gearshift or a steering wheel." *Id*. This revolutionary design meant that "[t]he loader could turn completely around in a circle the size of its own length, with one wheel moving forward and the other moving in reverse, pivoting around the caster wheel." *Id*.



**Figure 1: The Keller Self-Propelled Loader, which pivoted on a caster wheel in the rear of the machine.**

11.    The Keller Self-Propelled Loader was a hit, with farmers clamoring to buy the equipment. The Kellers licensed the exclusive manufacturing rights to Melroe in North Dakota and became employees at Melroe, continuing to develop their invention. *Id*.

12.     By 1960, the Kellers and the team at Melroe had hit upon a significant improvement for the Keller Self-Propelled Loader: a four-wheel skid-steer loader. *The History of the Bobcat* (2003), https://tinyurl.com/ye28uhjr. Through significant research, design, and development, this team improved the Self-Propelled Loader by incorporating a fourth wheel and a second axle, which allowed for four-wheel drive and allowed the wheels to skid for directional control—a new innovation that transformed the small equipment industry. *See* National Inventors Hall of Fame, *2023 Inductee Louis Keller: A Persistent Problem Solver*. By 1962, the team implemented this new innovation in a tough, quick, and agile small compact loader—the first machine to be called "the Bobcat." The breakthrough of the skid-steer, four-wheel drive machine presaged decades of industry-defining innovation from the company that would later be renamed after its groundbreaking technology. *See* Bobcat, *History Timeline*, https://www.bobcat.com/na/en/company/about/history/timeline (last accessed December 1, 2025).

**Figure 2: The original Melroe Bobcat (1962), which introduced four-wheel skid-steer to the Kellers' loaders.**

13.     In 1989, Bobcat introduced a new machine into its lineup: a compact excavator, the only such machine to be manufactured in the United States at the time.  *See* Bobcat, *History Timeline*.  Over the next three decades, Bobcat excavators led the industry in small-format excavation equipment, suitable for digging in confined spaces where large-scale equipment could not effectively operate.



**Figure 3: Bobcat's Compact Excavator (1989) was the first to be manufactured in North America.**

14.     Bobcat has been the industry-leader in compact equipment for more than 65 years, and today, the Bobcat brand is synonymous with the compact construction equipment industry.  Its initial Bobcat machine opened the door to a host of small-format equipment that have become ubiquitous on farms, construction sites, and in urban development sites worldwide.  Its excavators and next-generation series loaders continue to set the industry standard for compact equipment sold in the U.S. market.  In fact, these machines support customers in a wide variety of industries, including construction, forestry, landscaping and grounds maintenance, snow removal, and beyond.

15.     Over the last six decades, Bobcat has been a consistent innovator, augmenting its offerings by expanding its product line, increasing worker efficiency and productivity, and improving the safety and comfort of its equipment.

16.     With each new generation of compact loader, for example, Bobcat has introduced enhanced control systems, new features, and innovative safety elements.  Bobcat's commitment to the refinement and development of its products continues to drive forward the compact equipment industry it inaugurated decades ago.  *See* Tractor Zone, *A Historical Overview of Bobcat's Impact on Construction*, https://tractorzone.com/blog/a-historical-overview-of-bobcats-impact-on-

construction/ (last accessed March 27, 2024). Bobcat has "consistently pushed the boundaries with each new model, introducing technological innovations such as enhanced control systems, telematics, and smart attachments. These refinements have streamlined work processes, improved safety, and reduced the environmental impact of construction operations." *Id.*

17.     On information and belief, CAT is registered with the Division of Corporations in Delaware and maintains its principal place of business at 5205 N. O'Connor Boulevard, Suite 100, Irving, TX 75039, United States. On information and belief, HOLT is a Texas limited partnership and maintains its principal place of business at 5665 SE Loop 410, San Antonio, Texas, United States. On information and belief, HOLT is the "nation's largest Caterpillar dealership." Exhibit 1.[1]

18.     CAT was a late arrival to the skid-steer loader market. It did not begin manufacturing skid-steer loaders until 1999,[2] roughly 40 years after Bobcat created the market. Rather than innovate itself, CAT has chosen to take the innovations of Bobcat to attempt to unfairly compete with Bobcat in the skid-steer and broader compact equipment market. This has unfortunately been a pattern for CAT.

19.     As revealed in other litigations, CAT closely monitors its competitors' products, including tearing them down as part of its "new product introduction process." *See, e.g.*, *Wirtgen America, Inc. v. Caterpillar, Inc.*, Case No. 17-cv-00770) (D. Del.), D.I. 352 at 406:13-19.

20.     As described by its own engineers, CAT uses a "low cost producer process," whereby in addition to tearing down competitive products, it inspects, operates, and tests the functionality of those competitive products. *Id.* 406:13-410:2. CAT extensively documents these processes, including doing instrumented testing to identify the signals from the sensors in competitors' products and photographing every part of the teardown process. *Id.* at 409:25-410:8. CAT even makes CAD drawings of individual components of its competitors' machines. *Id.* at 410:15-20.

---

[1]     HOLT Group, https://www.holtgrp.com/ (last accessed December 1, 2025)

[2]     Caterpillar Skid Steers Summarized — 2021 Spec Guide, https://compactequip.com/skid-steers/caterpillar-skid-steers-summarized-2021-spec-guide/ (last accessed November 28, 2025).

21.     Through this process, CAT often looks to "develop features that would compete head to head with features on competitor machines." *Id.* at 415:6-13.  In particular, CAT works to identify "advanced technologies" in its competitors' products and potentially emulate them.  *Id.* at 417:21-24.  CAT does not just emulate the "advanced features," though, it also looks to add "catch up features" that would bring CAT "up to an equivalent level to the competition." *Id.* at 418:14-22.  Overall, CAT's process is "not just looking to mimic the quality of the -- of just a single bolt on a machine, [it is] looking at the whole system." *Id.* at 414:6-10.

22.     CAT's use of so many of Bobcat's patented technologies is consistent with its pattern and practice of identifying and emulating the key features in its competitors' products.

## JURISDICTION AND VENUE

23.     This Court has jurisdiction over the subject matter of this action under 28 U.S.C. §§ 1331 and 1338(a).

24.     This Court has personal jurisdiction over Defendants pursuant to the Constitution of the United States of America and/or the Texas Long Arm Statute.  On information and belief, CAT is headquartered within the state of Texas, in Irving, Texas.  On information and belief, HOLT is a Texas limited partnership and is headquartered within the state of Texas, in San Antonio, Texas.  Thus, CAT and HOLT are subject to personal jurisdiction in Texas and in this District.

25.     Venue is proper in this District pursuant to 28 U.S.C. § 1400(b).

26.     Venue is proper in this District as to CAT because CAT has committed acts of infringement and has a regular and established place of business within this District.  Specifically, on information and belief, CAT has manufacturing sites in Denison, Texas and Sherman, Texas, within this District.[3]  Upon information and belief, CAT has committed acts of infringement in this District by directly selling to dealers and distributors within this District the products accused of infringing at least one Asserted Patent (the "Accused Products").[4]  CAT "sell[s] finished products

---

[3]  Caterpillar US Locations, https://www.caterpillar.com/en/company/global-footprint/americas/united-states.html (last accessed December 1, 2025).

[4] "Accused Products" refers to the products identified as accused of infringing each Asserted Patent, as identified below.

primarily through an independent dealer network and directly to OEMs." *Id.* at 9.  CAT provides its CAT certified dealer and distributor operators onsite training and CAT equipment services through its network of several CAT Dealers in the Tyler, Kilgore, and Texarkana areas, thereby offering for sale, selling, and using the claimed inventions within this District.[5]  CAT infringes in this District by selling to those dealers and distributors, who in turn offer those Accused Products for sale in this District.  For example, HOLT advertises that it sells, services, and rents the CAT skid-steer and compact track loader lines, including CAT machine, engine, and truck parts in the Longview, Marshall, and Kilgore, Texas areas.[6,7]  In addition, through its dealer and distributor support services, CAT induces its dealers' and distributors' infringement in this District, including through those dealers and distributors offering for sale, selling, and using the Accused Products.

27.    Venue is proper in this District as to HOLT because HOLT has committed acts of infringement and has a regular and established place of business within this District.  According to HOLT, it is "the largest Caterpillar equipment dealership in the United States.  HOLT CAT sells, rents and services Caterpillar machines, engines and generator sets in a 118-county territory in Texas."  Exhibit 2.[8]  HOLT has regular and established places of businesses in the District, including locations in Tyler, Kilgore, and Nash, Texas; where it offers for sale, sells, and uses the Accused Products.  *See* Exhibit 3.[9]  Upon information and belief, HOLT has sold, offered for sale, and used the Accused Products at one or more of its locations in this District.  For example, HOLT advertises that it sells the CAT skid-steer and compact track loader equipment, including the

---

[5] *See* Exhibit 2; *see also* Find Your CAT Dealer, https://www.cat.com/en_US/support/dealer-locator.html (last accessed November 28, 2025).

[6]
https://www.holtcat.com/products/new/cat_machines.aspx?fn=ViewListing&pfc=477&product_category_Name=Skid%20Steer%20and%20Compact%20Track%20Loaders (last accessed on December 1, 2025).

[7] HOLT CAT Longview, https://www.holtcat.com/contact_us/store_locator/longview (last accessed on December 1, 2025).

[8]    HOLT Manufacturing, https://holtmanufacturing.com/about-us/legacy/ (last accessed December 1, 2025).

[9]    HOLT CAT Store Locator, https://www.holtcat.com/contact_us/store_locator (last accessed December 1, 2025).

Accused Products.[10]  In addition, venue is proper in this District as to HOLT pursuant to 28 U.S.C. § 1391(d) because HOLT is a Texas limited partnership that resides in Texas.

28.    Defendants' liability arises out of the same transaction, occurrence, and/or series of transactions, and thus are so intricately dependent and intertwined they should be joined in the same case.  Specifically, CAT is the manufacturer of the Accused Products and operates primarily through distribution to its dealerships.  HOLT, CAT's largest dealership, then sells and offers for sale to end users the Accused Products that were manufactured and/or imported by CAT.

### BOBCAT'S ASSERTED PATENTS

29.    On November 5, 2019, the United States Patent Office issued the '619 Patent, titled "Tracked Utility Vehicle" to the Clark Equipment Company.  Subsequently, Clark Equipment Company formally changed its name to Doosan Bobcat North America, Inc.  The '619 Patent identifies Ronald S. Hansen as the inventor.  A true and correct copy of the '619 Patent is attached hereto as Exhibit 4.

30.    On December 3, 2019, the United States Patent Office issued the '788 Patent, titled "System and Method for Defining a Zone of Operation for a Lift Arm" to the Clark Equipment Company.  Subsequently, Clark Equipment Company formally changed its name to Doosan Bobcat North America, Inc.  The '788 Patent identifies David Glasser and Jonathan Roehrl as the inventors. A true and correct copy of the '788 Patent is attached hereto as Exhibit 5.

31.    On July 5, 2016, the United States Patent Office issued the '925 Patent, titled "Automated Shifting of Hydraulic Drive Systems" to the Clark Equipment Company. Subsequently, Clark Equipment Company formally changed its name to Doosan Bobcat North America, Inc.  The '925 Patent identifies Patrick P. Lacher, Daniel J. Krieger, and Gunter G. Matt as the inventors.  A true and correct copy of the '925 Patent is attached hereto as Exhibit 6.

---

[10]   HOLT CAT New Machines, https://www.holtcat.com/products/new/cat_machines.aspx?fn=ViewListing&pfc=477&product_category_Name=Skid%20Steer%20and%20Compact%20Track%20Loaders (last accessed December 1, 2025).

32.     On March 2, 2021, the United States Patent Office issued the '687 Patent, titled "Hydraulic Power Prioritization" to the Clark Equipment Company.  Subsequently, Clark Equipment Company formally changed its name to Doosan Bobcat North America, Inc.  The '687 Patent identifies Charles Young as the inventor.  A true and correct copy of the '687 Patent is attached hereto as Exhibit 7.

33.     On May 28, 2019, the United States Patent Office issued the '027 Patent, titled "Variable Engine Control Speed" to the Clark Equipment Company.  Subsequently, Clark Equipment Company formally changed its name to Doosan Bobcat North America, Inc.  The '027 Patent identifies Ronald S. Hansen and Christopher L. Young as the inventors.  A true and correct copy of the '027 Patent is attached hereto as Exhibit 8.

34.     The Asserted Patents are valid and enforceable.

## COUNT I

## Infringement of the '619 Patent

35.     Bobcat re-alleges and incorporates by reference the allegations of the preceding paragraphs of this Complaint as if fully set forth herein.

36.     Bobcat is the assignee of the '619 Patent.  Bobcat has all substantial rights to enforce the '619 Patent, including the right to exclude others and to sue and recover damages for past and future infringement.

37.     The '619 Patent is valid, enforceable, and was duly issued in full compliance with Title 35 of the United States Code.

38.     Under 35 U.S.C. § 271(a), Defendants have infringed and continue to infringe at least claim 10 of the '619 Patent by, without authority, making, using, selling, offering for sale, and/or importing into the United States, including in Texas and this judicial District, at least the "'619 Accused Products," as identified in Exhibit 9, which is a representative claim chart showing Defendants' infringement of the '619 Patent.  The '619 Patent Accused Products infringe literally and/or under the doctrine of equivalents.

39.     Upon information and belief, CAT manufactures the '619 Accused Products in the United States and/or manufactures the '619 Accused Products outside the United States and then

imports the '619 Accused Products into the United States. Then CAT offers to sell, sells, and distributes '619 Accused Products to HOLT and other of its dealers in this District. HOLT then itself offers to sell and sells the '619 Accused Products to customers.

40. Defendants have known of the '619 Patent at least as early as the filing of this Complaint. Indeed, as set forth *infra*, on information and belief, CAT knew of the '619 Patent before the filing of this complaint, at or around the time of issuance of the '619 Patent.

41. Upon information and belief, under 35 U.S.C. § 271(b), Defendants have actively induced and continue to actively induce customers, distributors, and/or importers to use, import, purchase or sell the Accused Products that infringe at least claim 1 of the '619 Patent.

42. Upon information and belief, CAT has with specific intent actively induced, aided, and abetted the direct infringement of the '619 Patent by its customers and distributors by, inter alia, entering into distribution agreements with its dealers, such as HOLT, to distribute and sell products including the '619 Accused Products in the United States, training dealers such as HOLT in the use of the '619 Accused Products, advertising and promoting the sale of the '619 Accused Products to end customers when use of those products infringe, providing support and instruction to customers of the '619 Accused Products to encourage their use of the '619 Accused Products in an infringing manner, and manufacturing the Accused Products to conform with U.S. laws and regulations (*e.g.*, of the environmental protection agency). At least as of the filing of this Complaint, CAT knows that the sale and use of the '619 Accused Products infringe the '619 Patent. In addition, as described below, on information and belief CAT knew that the sale and use of the '619 Accused Products infringed the '619 Patent prior to the filing of this Complaint as well.

43. Upon information and belief, HOLT has with specific intent, actively induced, aided and abetted the direct infringement of the '619 Patent by its customers by selling the '619 Accused Products in the United States, advertising and promoting the sale of the '619 Accused Products to Defendants' end customers when use of those products infringe, and providing support and instruction to customers of the '619 Accused Products to encourage their use of the '619 Accused Products in an infringing manner.

44.    Upon information and belief, under 35 U.S.C. § 271(c), Defendants have contributed and continue to contribute to the infringement of at least claim 1 of the '619 Patent by making, using, selling, offering for sale, and/or importing into the United States components of infringing products that constitute a material part of at least claim 1 of the '619 Patent.  Defendants have engaged in these acts with knowledge of the patent and knowledge that the infringing products were especially made or adapted for use in the infringement of at least claim 1 of the '619 Patent, and that the accused components of the '619 Accused Products have no substantial non-infringing uses. For example, upon information and belief, CAT specifically designed and manufactured the Accused Products for use in the infringement of at least claim 1 of the '619 Patent and specifically designed the Accused Products not to have any substantial non-infringing uses.

45.    Upon information and belief, Defendants have knowledge, at least as early as the filing of this Complaint, that they are directly and/or indirectly infringing at least claim 1 of the '619 Patent and have not ceased their infringing conduct.  Defendants' infringing conduct has and continues to be willful, deliberate, and intentional misconduct beyond typical infringement such that Bobcat is entitled under 35 U.S.C. § 284 to enhanced damages up to three times the compensatory amount awarded.

46.    For example, upon information and belief, CAT has a practice of monitoring competitors and their patents.  *See, e.g.*, *Wirtgen America, Inc. v. Caterpillar, Inc.*, Case No. 17-cv-00770) (D. Del.), D.I. 352 at 432:22-433:8 (CAT regularly receives reports on competitor patents, "review[s] competitive patents as they come in" and conducts "a monthly review as well.").  And CAT has identified Bobcat as its competitor.  *See* Exhibit 10.[11] (declaring that the "competitive environment for construction machinery is characterized by some global competitors," including "Doosan Bobcat (Part of Doosan Group)").  On information and belief, CAT could only conclude that the Accused Products infringe the '619 Patent, but continued to make and sell such products despite its knowledge of its infringement.

---

[11]   Caterpillar 2024 Annual Report, https://s7d2.scene7.com/is/content/Caterpillar/CM20250506-c118a-5d3cb (last accessed December 1, 2025).

47.     Defendants are not licensed or otherwise authorized to practice the claims of the '619 Patent.

48.     By reason of Defendants' infringement, Bobcat has suffered and continues to suffer substantial damages.  Thus, Bobcat is entitled to recover the damages sustained as a result of Defendants' wrongful acts in an amount subject to proof at trial.  Bobcat will suffer irreparable injury unless the infringement is enjoined by this Court.

49.     Defendants' infringement of the '619 Patent is exceptional and entitles Bobcat to attorneys' fees and costs incurred in prosecuting this action under 35 U.S.C. § 285.

## COUNT II

## Infringement of the '788 Patent

50.     Bobcat re-alleges and incorporates by reference the allegations of the preceding paragraphs of this Complaint as if fully set forth herein.

51.     Bobcat is the assignee of the '788 Patent.  Bobcat has all substantial rights to enforce the '788 Patent, including the right to exclude others and to sue and recover damages for past and future infringement.

52.     The '788 Patent is valid, enforceable, and was duly issued in full compliance with Title 35 of the United States Code.

53.     Under 35 U.S.C. § 271(a), Defendants have infringed and continue to infringe at least claim 1 of the '788 Patent by, without authority, making, using, selling, offering for sale, and/or importing into the United States, including in Texas and this judicial District, at least the "'788 Accused Products," as identified in Exhibit 11, which is a representative claim chart showing Defendants' infringement of the '788 Patent.  The '788 Patent Accused Products infringe literally and/or under the doctrine of equivalents.

54.     Upon information and belief, CAT manufactures the '788 Accused Products in the United States and/or manufactures the '788 Accused Products outside the United States and then imports the '788 Accused Products into the United States.  Then CAT offers to sell, sells, and distributes '788 Accused Products to HOLT and other of its dealers in this District.  HOLT then itself offers to sell and sells the '788 Accused Products to customers.

55.    Defendants have known of the '788 Patent at least as early as the filing of this Complaint.  Indeed, as set forth *infra*, on information and belief, CAT knew of the '788 Patent before the filing of this complaint, at or around the time of issuance of the '788 Patent.

56.    Upon information and belief, under 35 U.S.C. § 271(b), Defendants have actively induced and continue to actively induce customers, distributors, and/or importers to use, import, purchase or sell the Accused Products that infringe at least claim 1 of the '788 Patent.

57.    Upon information and belief, CAT has with specific intent actively induced, aided, and abetted the direct infringement of the '788 Patent by its customers and distributors by, inter alia, entering into distribution agreements with its dealers, such as HOLT, to distribute and sell products including the '788 Accused Products in the United States, training dealers such as HOLT in the use of the '788 Accused Products, advertising and promoting the sale of the '788 Accused Products to end customers when use of those products infringe, providing support and instruction to customers of the '788 Accused Products to encourage their use of the '788 Accused Products in an infringing manner, and manufacturing the Accused Products to conform with U.S. laws and regulations (*e.g.*, of the environmental protection agency).  At least as of the filing of this Complaint, CAT knows that the sale and use of the '788 Accused Products infringe the '788 Patent. In addition, as described below, on information and belief CAT knew that the sale and use of the '788 Accused Products infringed the '788 Patent prior to the filing of this Complaint as well.

58.    Upon information and belief, HOLT has with specific intent, actively induced, aided and abetted the direct infringement of the '788 Patent by its customers by selling the '788 Accused Products in the United States, advertising and promoting the sale of the '788 Accused Products to Defendants' end customers when use of those products infringe, and providing support and instruction to customers of the '788 Accused Products to encourage their use of the '788 Accused Products in an infringing manner.

59.    Upon information and belief, under 35 U.S.C. § 271(c), Defendants have contributed and continue to contribute to the infringement of at least claim 1 of the '788 Patent by making, using, selling, offering for sale, and/or importing into the United States components of infringing products that constitute a material part of at least claim 1 of the '788 Patent.  Defendants have

engaged in these acts with knowledge of the patent and knowledge that the infringing products were especially made or adapted for use in the infringement of at least claim 1 of the '788 Patent, and that the accused components of the '788 Accused Products have no substantial non-infringing uses. For example, upon information and belief, CAT specifically designed and manufactured the Accused Products for use in the infringement of at least claim 1 of the '788 Patent and specifically designed the Accused Products not to have any substantial non-infringing uses.

60.    Upon information and belief, Defendants have knowledge, at least as early as the filing of this Complaint, that they are directly and/or indirectly infringing at least claim 1 of the '788 Patent and have not ceased their infringing conduct.  Defendants' infringing conduct has and continues to be willful, deliberate, and intentional misconduct beyond typical infringement such that Bobcat is entitled under 35 U.S.C. § 284 to enhanced damages up to three times the compensatory amount awarded.

61.    For example, upon information and belief, CAT has a practice of monitoring competitors and their patents.  *See, e.g.*, *Wirtgen America, Inc. v. Caterpillar, Inc.*, Case No. 17-cv-00770) (D. Del.), D.I. 352 at 432:22-433:8 (CAT regularly receives reports on competitor patents, "review[s] competitive patents as they come in" and conducts "a monthly review as well.").  And CAT has identified Bobcat as its competitor.  *See* Exhibit 10.[12] (declaring that the "competitive environment for construction machinery is characterized by some global competitors," including "Doosan Bobcat (Part of Doosan Group)").  On information and belief, CAT could only conclude that the Accused Products infringe the '788 Patent, but continued to make and sell such products despite its knowledge of its infringement.

62.    Defendants are not licensed or otherwise authorized to practice the claims of the '788 Patent.

63.    By reason of Defendants' infringement, Bobcat has suffered and continues to suffer substantial damages.  Thus, Bobcat is entitled to recover the damages sustained as a result of

---

[12]  Caterpillar 2024 Annual Report,
https://s7d2.scene7.com/is/content/Caterpillar/CM20250506-c118a-5d3cb (last accessed December 1, 2025).

Defendants' wrongful acts in an amount subject to proof at trial. Bobcat will suffer irreparable injury unless the infringement is enjoined by this Court.

64.    Defendants' infringement of the '788 Patent is exceptional and entitles Bobcat to attorneys' fees and costs incurred in prosecuting this action under 35 U.S.C. § 285.

## COUNT III

### Infringement of the '925 Patent

65.    Bobcat re-alleges and incorporates by reference the allegations of the preceding paragraphs of this Complaint as if fully set forth herein.

66.    Bobcat is the assignee of the '925 Patent. Bobcat has all substantial rights to enforce the '925 Patent, including the right to exclude others and to sue and recover damages for past and future infringement.

67.    The '925 Patent is valid, enforceable, and was duly issued in full compliance with Title 35 of the United States Code.

68.    Under 35 U.S.C. § 271(a), Defendants have infringed and continue to infringe at least claim 18 of the '925 Patent by, without authority, making, using, selling, offering for sale, and/or importing into the United States, including in Texas and this judicial District, at least the "'925 Accused Products," as identified in Exhibit 12, which is a representative claim chart showing Defendants' infringement of the '925 Patent. The '925 Patent Accused Products infringe literally and/or under the doctrine of equivalents.

69.    Upon information and belief, CAT manufactures the '925 Accused Products in the United States and/or manufactures the '925 Accused Products outside the United States and then imports the '925 Accused Products into the United States. Then CAT offers to sell, sells, and distributes '925 Accused Products to HOLT and other of its dealers in this District. HOLT then itself offers to sell and sells the '925 Accused Products to customers.

70.    Defendants have known of the '925 Patent at least as early as the filing of this Complaint. Indeed, as set forth *infra*, on information and belief, CAT knew of the '925 Patent before the filing of this complaint, at or around the time of issuance of the '925 Patent.

71.      Upon information and belief, under 35 U.S.C. § 271(b), Defendants have actively induced and continue to actively induce customers, distributors, and/or importers to use, import, purchase or sell the Accused Products that infringe at least claim 1 of the '925 Patent.

72.      Upon information and belief, CAT has with specific intent actively induced, aided, and abetted the direct infringement of the '925 Patent by its customers and distributors by, inter alia, entering into distribution agreements with its dealers, such as HOLT, to distribute and sell products including the '925 Accused Products in the United States, training dealers such as HOLT in the use of the '925 Accused Products, advertising and promoting the sale of the '925 Accused Products to end customers when use of those products infringe, providing support and instruction to customers of the '925 Accused Products to encourage their use of the '925 Accused Products in an infringing manner, and manufacturing the Accused Products to conform with U.S. laws and regulations (*e.g.*, of the environmental protection agency).  At least as of the filing of this Complaint, CAT knows that the sale and use of the '925 Accused Products infringe the '925 Patent. In addition, as described below, on information and belief CAT knew that the sale and use of the '925 Accused Products infringed the '925 Patent prior to the filing of this Complaint as well.

73.      Upon information and belief, HOLT has with specific intent, actively induced, aided and abetted the direct infringement of the '925 Patent by its customers by selling the '925 Accused Products in the United States, advertising and promoting the sale of the '925 Accused Products to Defendants' end customers when use of those products infringe, and providing support and instruction to customers of the '925 Accused Products to encourage their use of the '925 Accused Products in an infringing manner.

74.      Upon information and belief, under 35 U.S.C. § 271(c), Defendants have contributed and continue to contribute to the infringement of at least claim 1 of the '925 Patent by making, using, selling, offering for sale, and/or importing into the United States components of infringing products that constitute a material part of at least claim 1 of the '925 Patent.  Defendants have engaged in these acts with knowledge of the patent and knowledge that the infringing products were especially made or adapted for use in the infringement of at least claim 1 of the '925 Patent, and that the accused components of the '925 Accused Products have no substantial non-infringing uses.

For example, upon information and belief, CAT specifically designed and manufactured the Accused Products for use in the infringement of at least claim 1 of the '925 Patent and specifically designed the Accused Products not to have any substantial non-infringing uses.

75.    Upon information and belief, Defendants have knowledge, at least as early as the filing of this Complaint, that they are directly and/or indirectly infringing at least claim 1 of the '925 Patent and have not ceased their infringing conduct.  Defendants' infringing conduct has and continues to be willful, deliberate, and intentional misconduct beyond typical infringement such that Bobcat is entitled under 35 U.S.C. § 284 to enhanced damages up to three times the compensatory amount awarded.

76.    For example, upon information and belief, CAT has a practice of monitoring competitors and their patents.  *See, e.g.*, *Wirtgen America, Inc. v. Caterpillar, Inc.*, Case No. 17-cv-00770) (D. Del.), D.I. 352 at 432:22-433:8 (CAT regularly receives reports on competitor patents, "review[s] competitive patents as they come in" and conducts "a monthly review as well.").  And CAT has identified Bobcat as its competitor.  *See* Exhibit 10.[13] (declaring that the "competitive environment for construction machinery is characterized by some global competitors," including "Doosan Bobcat (Part of Doosan Group)").  On information and belief, CAT could only conclude that the Accused Products infringe the '925 Patent, but continued to make and sell such products despite its knowledge of its infringement.

77.    In addition, Bobcat marks its products with its practiced patents; and thus, on information and belief, CAT was on notice of Bobcat's practicing products and the '925 Patent soon after it issued.  Indeed, a CAT representative has testified that it is a "standard business practice in this industry for companies to compare their functionality of their competitor's machines," and therefore, on information and belief, CAT would have been aware of Bobcat's practicing products and therefore on notice of the asserted patent.  *Wirtgen America, Inc. v. Caterpillar, Inc.*, Case No. 17-cv-00770 (D. Del.), D.I. 352 at 356:7-10.

---

[13]  Caterpillar 2024 Annual Report, https://s7d2.scene7.com/is/content/Caterpillar/CM20250506-c118a-5d3cb (last accessed December 1, 2025).

78.     Defendants are not licensed or otherwise authorized to practice the claims of the '925 Patent.

79.     By reason of Defendants' infringement, Bobcat has suffered and continues to suffer substantial damages.  Thus, Bobcat is entitled to recover the damages sustained as a result of Defendants' wrongful acts in an amount subject to proof at trial.  Bobcat will suffer irreparable injury unless the infringement is enjoined by this Court.

80.     Defendants' infringement of the '925 Patent is exceptional and entitles Bobcat to attorneys' fees and costs incurred in prosecuting this action under 35 U.S.C. § 285.

## COUNT IV

## Infringement of the '687 Patent

81.     Bobcat re-alleges and incorporates by reference the allegations of the preceding paragraphs of this Complaint as if fully set forth herein.

82.     Bobcat is the assignee of the '687 Patent.  Bobcat has all substantial rights to enforce the '687 Patent, including the right to exclude others and to sue and recover damages for past and future infringement.

83.     The '687 Patent is valid, enforceable, and was duly issued in full compliance with Title 35 of the United States Code.

84.     Under 35 U.S.C. § 271(a), Defendants have infringed and continue to infringe at least claim 1 of the '687 Patent by, without authority, making, using, selling, offering for sale, and/or importing into the United States, including in Texas and this judicial District, at least the "'687 Accused Products," as identified in Exhibit 13, which is a representative claim chart showing Defendants' infringement of the '687 Patent.  The '687 Patent Accused Products infringe literally and/or under the doctrine of equivalents.

85.     Upon information and belief, CAT manufactures the '687 Accused Products in the United States and/or manufactures the '687 Accused Products outside the United States and then imports the '687 Accused Products into the United States.  Then CAT offers to sell, sells, and distributes '687 Accused Products to HOLT and other of its dealers in this District.  HOLT then itself offers to sell and sells the '687 Accused Products to customers.

86.     Defendants have known of the '687 Patent at least as early as the filing of this Complaint.  Indeed, as set forth *infra*, on information and belief, CAT knew of the '687 Patent before the filing of this complaint, at or around the time of issuance of the '687 Patent.

87.     Upon information and belief, under 35 U.S.C. § 271(b), Defendants have actively induced and continue to actively induce customers, distributors, and/or importers to use, import, purchase or sell the Accused Products that infringe at least claim 1 of the '687 Patent.

88.     Upon information and belief, CAT has with specific intent actively induced, aided, and abetted the direct infringement of the '687 Patent by its customers and distributors by, inter alia, entering into distribution agreements with its dealers, such as HOLT, to distribute and sell products including the '687 Accused Products in the United States, training dealers such as HOLT in the use of the '687 Accused Products, advertising and promoting the sale of the '687 Accused Products to end customers when use of those products infringe, providing support and instruction to customers of the '687 Accused Products to encourage their use of the '687 Accused Products in an infringing manner, and manufacturing the Accused Products to conform with U.S. laws and regulations (*e.g.*, of the environmental protection agency).   At least as of the filing of this Complaint, CAT knows that the sale and use of the '687 Accused Products infringe the '687 Patent. In addition, as described below, on information and belief CAT knew that the sale and use of the '687 Accused Products infringed the '687 Patent prior to the filing of this Complaint as well.

89.     Upon information and belief, HOLT has, with specific intent, actively induced, aided and abetted the direct infringement of the '687 Patent by its customers by selling the '687 Accused Products in the United States, advertising and promoting the sale of the '687 Accused Products to Defendants' end customers when use of those products infringe, and providing support and instruction to customers of the '687 Accused Products to encourage their use of the '687 Accused Products in an infringing manner.

90.     Upon information and belief, under 35 U.S.C. § 271(c), Defendants have contributed and continue to contribute to the infringement of at least claim 1 of the '687 Patent by making, using, selling, offering for sale, and/or importing into the United States components of infringing products that constitute a material part of at least claim 1 of the '687 Patent.  Defendants have

engaged in these acts with knowledge of the patent and knowledge that the infringing products were especially made or adapted for use in the infringement of at least claim 1 of the '687 Patent, and that the accused components of the '687 Accused Products have no substantial non-infringing uses. For example, upon information and belief, CAT specifically designed and manufactured the Accused Products for use in the infringement of at least claim 1 of the '687 Patent and specifically designed the Accused Products not to have any substantial non-infringing uses.

91.     Upon information and belief, Defendants have knowledge, at least as early as the filing of this Complaint, that they are directly and/or indirectly infringing at least claim 1 of the '687 Patent and have not ceased their infringing conduct. Defendants' infringing conduct has and continues to be willful, deliberate, and intentional misconduct beyond typical infringement such that Bobcat is entitled under 35 U.S.C. § 284 to enhanced damages up to three times the compensatory amount awarded.

92.     For example, upon information and belief, CAT has a practice of monitoring competitors and their patents. *See, e.g.*, *Wirtgen America, Inc. v. Caterpillar, Inc.*, Case No. 17-cv-00770) (D. Del.), D.I. 352 at 432:22-433:8 (CAT regularly receives reports on competitor patents, "review[s] competitive patents as they come in" and conducts "a monthly review as well."). And CAT has identified Bobcat as its competitor. *See* Exhibit 10.[14] (declaring that the "competitive environment for construction machinery is characterized by some global competitors," including "Doosan Bobcat (Part of Doosan Group)"). On information and belief, CAT could only conclude that the Accused Products infringe the '687 Patent, but continued to make and sell such products despite its knowledge of its infringement.

93.     In addition, Bobcat marks its products with its practiced patents; and thus, on information and belief, CAT was on notice of Bobcat's practicing products and the '687 Patent soon after it issued. Indeed, a CAT representative has testified that it is a "standard business practice in this industry for companies to compare their functionality of their competitor's machines," and

---

[14]  Caterpillar 2024 Annual Report, https://s7d2.scene7.com/is/content/Caterpillar/CM20250506-c118a-5d3cb (last accessed December 1, 2025).

therefore, on information and belief, CAT would have been aware of Bobcat's practicing products and therefore on notice of the asserted patent. *Wirtgen America, Inc. v. Caterpillar, Inc.*, Case No. 17-cv-00770 (D. Del.), D.I. 352 at 356:7-10.

94.    Defendants are not licensed or otherwise authorized to practice the claims of the '687 Patent.

95.    By reason of Defendants' infringement, Bobcat has suffered and continues to suffer substantial damages.  Thus, Bobcat is entitled to recover the damages sustained as a result of Defendants' wrongful acts in an amount subject to proof at trial.  Bobcat will suffer irreparable injury unless the infringement is enjoined by this Court.

96.    Defendants' infringement of the '687 Patent is exceptional and entitles Bobcat to attorneys' fees and costs incurred in prosecuting this action under 35 U.S.C. § 285.

## COUNT V

## Infringement of the '027 Patent

97.    Bobcat re-alleges and incorporates by reference the allegations of the preceding paragraphs of this Complaint as if fully set forth herein.

98.    Bobcat is the assignee of the '027 Patent.  Bobcat has all substantial rights to enforce the '027 Patent, including the right to exclude others and to sue and recover damages for past and future infringement.

99.    The '027 Patent is valid, enforceable, and was duly issued in full compliance with Title 35 of the United States Code.

100.    Under 35 U.S.C. § 271(a), Defendants have infringed and continue to infringe at least claim 1 of the '027 Patent by, without authority, making, using, selling, offering for sale, and/or importing into the United States, including in Texas and this judicial District, at least the "'027 Accused Products," as identified in Exhibit 14, which is a representative claim chart showing Defendants' infringement of the '027 Patent.  The '027 Patent Accused Products infringe literally and/or under the doctrine of equivalents.

101.    Upon information and belief, CAT manufactures the '027 Accused Products in the United States and/or manufactures the '027 Accused Products outside the United States and then

imports the '027 Accused Products into the United States. Then CAT offers to sell, sells, and distributes '027 Accused Products to HOLT and other of its dealers in this District. HOLT then itself offers to sell and sells the '027 Accused Products to customers.

102. Defendants have known of the '027 Patent at least as early as the filing of this Complaint. Indeed, as set forth *infra*, on information and belief, CAT knew of the '027 Patent before the filing of this complaint, at or around the time of issuance of the '027 Patent.

103. Upon information and belief, under 35 U.S.C. § 271(b), Defendants have actively induced and continue to actively induce customers, distributors, and/or importers to use, import, purchase or sell the Accused Products that infringe at least claim 1 of the '027 Patent.

104. Upon information and belief, CAT has, with specific intent, actively induced, aided, and abetted the direct infringement of the '027 Patent by its customers and distributors by, inter alia, entering into distribution agreements with its dealers, such as HOLT, to distribute and sell products including the '027 Accused Products in the United States, training dealers such as HOLT in the use of the '027 Accused Products, advertising and promoting the sale of the '027 Accused Products to end customers when use of those products infringe, providing support and instruction to customers of the '027 Accused Products to encourage their use of the '027 Accused Products in an infringing manner, and manufacturing the Accused Products to conform with U.S. laws and regulations (*e.g.*, of the environmental protection agency). At least as of the filing of this Complaint, CAT knows that the sale and use of the '027 Accused Products infringe the '027 Patent. In addition, as described below, on information and belief CAT knew that the sale and use of the '027 Accused Products infringed the '027 Patent prior to the filing of this Complaint as well.

105. Upon information and belief, HOLT has with specific intent, actively induced, aided and abetted the direct infringement of the '027 Patent by its customers by selling the '027 Accused Products in the United States, advertising and promoting the sale of the '027 Accused Products to Defendants' end customers when use of those products infringe, and providing support and instruction to customers of the '027 Accused Products to encourage their use of the '027 Accused Products in an infringing manner.

106.    Upon information and belief, under 35 U.S.C. § 271(c), Defendants have contributed and continue to contribute to the infringement of at least claim 1 of the '027 Patent by making, using, selling, offering for sale, and/or importing into the United States components of infringing products that constitute a material part of at least claim 1 of the '027 Patent.  Defendants have engaged in these acts with knowledge of the patent and knowledge that the infringing products were especially made or adapted for use in the infringement of at least claim 1 of the '027 Patent, and that the accused components of the '027 Accused Products have no substantial non-infringing uses. For example, upon information and belief, CAT specifically designed and manufactured the Accused Products for use in the infringement of at least claim 1 of the '027 Patent and specifically designed the Accused Products not to have any substantial non-infringing uses.

107.    Upon information and belief, Defendants have knowledge, at least as early as the filing of this Complaint, that they are directly and/or indirectly infringing at least claim 1 of the '027 Patent and have not ceased their infringing conduct.  Defendants' infringing conduct has and continues to be willful, deliberate, and intentional misconduct beyond typical infringement such that Bobcat is entitled under 35 U.S.C. § 284 to enhanced damages up to three times the compensatory amount awarded.

108.    For example, upon information and belief, CAT has a practice of monitoring competitors and their patents.  *See, e.g.*, *Wirtgen America, Inc. v. Caterpillar, Inc.*, Case No. 17-cv-00770) (D. Del.), D.I. 352 at 432:22-433:8 (CAT regularly receives reports on competitor patents, "review[s] competitive patents as they come in" and conducts "a monthly review as well.").  And CAT has identified Bobcat as its competitor.  *See* Exhibit 10.[15] (declaring that the "competitive environment for construction machinery is characterized by some global competitors," including "Doosan Bobcat (Part of Doosan Group)").  On information and belief, CAT could only conclude that the Accused Products infringe the '027 Patent, but continued to make and sell such products despite its knowledge of its infringement.

---

[15]  Caterpillar 2024 Annual Report,
https://s7d2.scene7.com/is/content/Caterpillar/CM20250506-c118a-5d3cb (last accessed December 1, 2025).

109.    In addition, Bobcat marks its products with its practiced patents; and thus, on information and belief, CAT was on notice of Bobcat's practicing products and the '027 Patent soon after it issued.  Indeed, a CAT representative has testified that it is a "standard business practice in this industry for companies to compare their functionality of their competitor's machines," and therefore, on information and belief, CAT would have been aware of Bobcat's practicing products and therefore on notice of the asserted patent.  *Wirtgen America, Inc. v. Caterpillar, Inc.*, Case No. 17-cv-00770 (D. Del.), D.I. 352 at 356:7-10.

110.    Defendants are not licensed or otherwise authorized to practice the claims of the '027 Patent.

111.    By reason of Defendants' infringement, Bobcat has suffered and continues to suffer substantial damages.  Thus, Bobcat is entitled to recover the damages sustained as a result of Defendants' wrongful acts in an amount subject to proof at trial.  Bobcat will suffer irreparable injury unless the infringement is enjoined by this Court.

112.    Defendants' infringement of the '027 Patent is exceptional and entitles Bobcat to attorneys' fees and costs incurred in prosecuting this action under 35 U.S.C. § 285.

## **PRAYER FOR RELIEF**

WHEREFORE, Bobcat respectfully prays for the following relief:

(a)    A judgment that Defendants have directly and/or indirectly infringed the Asserted Patents;

(b)    A judgment that Defendants have willfully infringed the Asserted Patents;

(c)    A permanent injunction enjoining Defendants, together with its employees, agents, officers, directors, attorneys, successors, affiliates, subsidiaries, and assigns, and those persons in active concert or participation with them, from directly and/or indirectly infringing the Asserted Patents;

(d)    An award of damages adequate to compensate Bobcat for Defendants' infringement

of the Asserted Patents pursuant to 35 U.S.C. § 284;

    (e)    An accounting and/or an ongoing royalty as necessary to determine the amount of and award Bobcat any post-verdict royalties and/or lost profits;

    (f)    An increase in the damages award up to three times the actual amount assessed, pursuant to 35 U.S.C. § 284;

    (g)    That Defendants be ordered to pay to Bobcat pre-judgment and post-judgment interest;

    (h)    A determination that this action is exceptional pursuant to 35 U.S.C. § 285, and an award to Bobcat of its attorneys' fees, costs, and expenses incurred in connection with this action; and

    (I)    Such other relief as the Court deems just and equitable.

## DEMAND FOR JURY TRIAL

Pursuant to Rule 38 of the Federal Rules of Civil Procedure, Plaintiff hereby demands a trial by jury as to all issues so triable.

DATED: December 2, 2025          Respectfully submitted,

By:    /s/ Marc L. Kaplan
_____

Deron Dacus
Texas Bar No. 00790553
THE DACUS FIRM
821 ESE Loop 323, Suite 430
Tyler, TX 75701
ddacus@dacusfirm.com
Tel.:  (903) 705-7233

Sean Pak
Iman Lordgooei
QUINN EMANUEL URQUHART & SULLIVAN, LLP
50 California Street, 22nd Floor
San Francisco, CA 94111
Tel.: (415) 875-6600
seanpak@quinnemanuel.com
imanlordgooei@quinnemanuel.com

Nathan Hamstra
Marc Kaplan
QUINN EMANUEL URQUHART & SULLIVAN, LLP
191 N. Wacker Drive, Suite 2700
Chicago, IL 60606
Tel.: (312) 705-7400
nathanhamstra@quinnemanuel.com
marckaplan@quinnemanuel.com

D. James Pak
Valerie Lozano
QUINN EMANUEL URQUHART & SULLIVAN, LLP
865 S Figueroa St 10th Floor
Los Angeles, CA 90017
Tel.:  (213) 443-3000
djamespak@quinnemanuel.com
valerielozano@quinnemanuel.com

*Counsel for Plaintiff Doosan Bobcat North America, Inc.*